Daniel Thomas, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Atlantic Refining Company, Respondents.

Argued October 6, 1980, before Judges Mencer, Rogers and Palladino, sitting as a panel of three.

450

*Robert A. Polin,* for petitioner.

*Susan McLaughlin,* with her *David L. Pennington,* for respondent, Atlantic Refining Company.

OPINION BY JUDGE PALLADINO, December 18, 1980:

This is an appeal by Daniel Thomas (claimant) from an order of the Workmen's Compensation Appeal Board (Board) reversing the referee and denying claimant compensation for a psychiatric disability.

Claimant had been employed as a laborer for over twenty years at Atlantic Refining Company's (ARCO) Philadelphia refinery when on May 11, 1970, a fire occurred at the refinery, the heat from which burned the claimant. Claimant saw at least one fellow employee fatally burned by this fire. Claimant was told to, and did, report to work for the next six months but he was not given any work to perform although he was paid his full salary. A polio victim at age three, claimant suffers from a hunchback deformity of the spine and a withered right leg. Up until May 11, 1970, he was, however, able to perform all of his physical tasks satisfactorily. After the fire, he complained of his right leg giving him "trouble", due to running to get out of the fire, and he was allowed to

take a job as a "houseman" which entailed working inside a central room monitoring equipment gauges. Also after the fire, claimant began to experience emotional problems such as irritability, restlessness, depression and anxiety about working in the vicinity of fire. He also had difficulty sleeping and nightmares about fire.

In 1971, there was an explosion, but no fire, at the refinery 75 yards from the control room where claimant was situated. Also in 1971, claimant suffered a "nervous breakdown" and was home for six weeks under his family physician's care. Another fire occurred in 1974, 100 feet away from the claimant, again while he was in the control room.

In 1974, a company order directed that every employee learn more than one job and the claimant was assigned to an outside "second operator" position requiring substantial climbing. Although claimant did not want to do this job because of problems he had with his leg, spine, and neck, he worked as a second operator for about one year.

On August 17, 1975 claimant watched a television news broadcast concerning a nearby Gulf refinery fire. On August 19, 1975, he was sent home from work because of high blood pressure after seeing the company physician and complaining of a "nervousness" like "a palsy". The company doctor referred him to his family physician. Because his family physician had died, claimant went to Dr. Sulman, an osteopath in general practice. Dr. Sulman treated the claimant for high blood pressure and upon hearing claimant's history of sleeplessness and anxiety, referred him to a Dr. Guest, a neuro-psychiatrist. In October of 1975, Dr. Guest diagnosed the claimant as suffering from, among other things, a post-traumatic neurosis.

Claimant filed a claim for workmen's compensation benefits on June 11, 1976. Following hearings, at

452.

which Dr. Sulman, Dr. Guest and the claimant testified, a referee awarded the claimant compensation on July 20, 1977. On appeal, the Board remanded the case to the referee for more adequate findings of fact and for a ruling on the applicability of the statute of limitations. On March 30, 1977, the referee, after making detailed findings of fact and conclusions of law again awarded compensation to the claimant. ARCO appealed again and the Board, without taking additional evidence, reversed. Claimant brings this appeal. We affirm.

The Board, in reversing the referee's decision found that various findings of fact were not supported by substantial evidence and when such findings were deleted claimant had not met his burden of proof. The Board, of course, may reverse the referee when a necessary finding of fact is not supported by substantial evidence. *Zoltak v. Keystone-Harmony Dairy,* 47 Pa. Commonwealth Ct. 378, 408 A.2d 198 (1979), *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Workmen's Compensation Appeal Board v. Auto Express, Inc.,* 21 Pa. Commonwealth Ct. 559, 346 A.2d 829 (1975). We believe the Board properly reversed the referee because of the evidentiary insufficiency of two crucial findings, namely (1) that a compensable injury occurred in August of 1975 and (2) that proper notice of such was given.

We will address the compensable injury issue first. Claimant's theory of recovery is that an injury-disability occurred in August, 1975 due to the culmination of a series of traumatic incidents experienced by the claimant in his last five years of employment, including the fires, the explosion, and his daily exposure to the possibility of a recurrence of these acci-

dents. We recognize that under the 1972 amendments to Section 301(c)(1) of the Workmen's Compensation Act (Act),[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411, if the alleged injury occurred on or after May 1, 1972, claimant need no longer prove an "accident" in order for his injury to be compensable. Injuries are now compensable if (1) they arise in the course of employment and (2) are related thereto. *Workmen's Compensation Appeal Board v. Jeddo Highland Coal Co.,* 19 Pa. Commonwealth Ct. 90, 338 A.2d 744 (1975). Before that two-step analysis is reached, however, the claimant must prove an injury has occurred. Again due to the 1972 amendments, the term "injury" is not confined to the occurrence of physical harm to the body. We have recently held that a work-related mental illness can be a compensable injury under the Act if there is competent and unequivocal medical testimony to support a determination that the employee is disabled by such a mental illness. *University of Pittsburgh v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 347, 405 A.2d 1048 (1979).

Under these new developments in the law claimant contends, and the referee found, that a psychiatric disability occurred in August, 1975.[2] The evidence presented, however, does not support the conclusion that the claimant suffered a distinct psychiatric injury in August of 1975 as opposed to May of 1970 or in the

---

[1] Section 7 of the Act of March 29, 1972, P.L. 159.

[2] The nebulous character of the alleged injury is evidenced by the many conflicting dates stated in the record as the date the injury allegedly occurred. Although the claimant's last day of work was August 19, 1975 and his television viewing of the Gulf refinery fire was on August 17, 1975, the claimant's original claim petition placed the date of injury at May 11, 1970 and claimed that the disablement period ran from August 19, 1975 to the present. The claimant's appeal brief before the Board refers to August 1, 1975 as the injury date. The referee awarded compensation starting August 15, 1975.

years immediately after the 1970 fire. In fact, a large part of the claimant's and physicians' testimony revolves around the emotional problems claimant began to experience immediately after the 1970 fire.[3] These problems, described as nervousness, shaking and sleeplessness, did not change in August of 1975 due to any work-related incident. The only event which singles out August from any other month within the

---

[3] A significant passage from the claimant's testimony is as follows:

Q: Were there any other mental or emotional problems that you had after this accident?

A: Yes, nightmares, dreaming of the fire all the time and restlessness.

Q: How often would this happen to you?

A: It happened up until the time I just had a nervous breakdown.

Q: Would it happen once a day, once a week, once a month, once a year?

A: For the last six years. I haven't slept a full night since the fire. I sleep two hours, wake up, sleep two hours, wake up, turning and twisting all the time.

He further testified:

Q: You say for a long period of time you had difficulty sleeping, is that right?

A: Yes.

Q: Have you taken any medication for that problem?

A: I'm still on medication now.

Q: When did you start taking medication for your sleeping problem?

A: I took medication when I was going to Dr. Sherkoff with a sleeping problem.

Q: When did you say you started seeing him? That was after you stopped work?

A: After I stopped work.

Q: That was in 1971, right?

A: Yes.

Q: You have taken some kind of medicine for sleeping ever since?

A: Yes.

preceding five years is that a serious fire occurred at the Gulf refinery and claimant watched news coverage of it.[4] Claimant's reaction to this non-work-related event is not a compensable injury within the meaning of Section 301(c) of the Act. *See Bowes v. Intercommunity Action Inc.*, 49 Pa. Commonwealth Ct. 612, 411 A.2d 1279 (1980).

Due to the highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed. In previous cases involving recovery for emotional injury, an identifiable work-related physical injury has accompanied the mental illness and the two injuries, physical and mental, occur close in time to each other. *Stump v. Follmer Trucking Co.*, 448 Pa. 313, 292 A.2d 294 (1974) (emotional excitement after truck accident leading to heart attack), *University of Pittsburgh v. Workmen's Compensation Appeal Board, supra,* (work-related stress leading to suicide), *Dill Products v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 563, 401 A.2d 409 (1979) (physical injury to foot leading to severe emotional strain), *Steinle v. Workmen's Compensation Appeal Board,* 38 Pa. Commonwealth Ct. 241, 393 A.2d 503 (1978) (work-related anxiety leading to ischemic heart condition), *Seko v. Hub Knitting Co.*, 142 Pa. Superior Ct. 309, 16 A.2d 138 (1969) (physical injury to finger leading to neurosis), *Holobinko v. Moshannon Smithing Coal Co.*, 145 Pa. Superior Ct. 489, 21 A.2d 440 (1941) (slip and fall accident leading to neurosis).

Claimant would have us reverse the Board and affirm the referee's award of benefits for an alleged

---

[4] Admittedly, the month of August is also remarkable because the claimant went home sick from work. It should be noted, however, that he had lost work time before for this "nervousness", for example, when he was home for six weeks with a "nervous breakdown". He did not, however, file for disability at that time.

psychiatric injury occurring in August, 1975 which the evidence supports was precipitated by the 1970 fire and possibly reinforced by the 1971 explosion and 1974 fire. The conclusion that the psychiatric injury did not occur until August of 1975 is not one supported by substantial evidence. In other words, the evidence presented is not that which a reasonable mind would find adequate to support a finding that a work-related injury occurred in August, 1975. Although claimant contends that his daily fear of another traumatic incident was disabling, we cannot hold that evidence of an employee's subjective reaction to being at work and being exposed to normal working conditions is an injury under the Act. The gradual or cumulative injury cases cited by the claimant are not persuasive because they involve harm to the employee which is objectively measurable. *Hinkle v. H. J. Heinz Co.*, 462 Pa. 111, 337 A.2d 907 (1975) (loss of hearing due to loud working place), *Workmen's Compensation Appeal Board v. Hamilton*, 21 Pa. Commonwealth Ct. 425, 346 A.2d 387 (1975) (arm injury due to repeated striking of wooden mallet against plastic molding machine).

Turning now to the notice question, it is clear that applicable law requires that unless the employer, or an agent of the employer regularly employed at the place of employment of the injured employee, receives notice or has knowledge that a certain employee was injured on or about a specified time, at or near a place specified, within 120 days after the occurrence, no compensation shall be allowed. Sections 311-13 of the Act, 77 P.S. §§631-33.

The purpose of such notice requirements is to protect the employer from claims for injuries of which he had no knowledge, made after the opportunity for a complete and full investigation has passed. *Padilla v. Chain Bike Corp.*, 27 Pa. Commonwealth Ct. 190, 365 A.2d 903 (1976). Notice provisions may also warn

an employer of dangerous employment conditions, and, thus facilitate their speedy correction. *Katz v. Evening Bulletin,* 485 Pa. 536, 403 A.2d 518 (1979). The time limit is mandatory and cannot be extended except in circumstances not at issue in this case. *Canterna v. U.S.S. Corp.,* 12 Pa. Commonwealth Ct. 579, 317 A.2d 355 (1974). Whether notice has been given is a question of fact. In this case, where the referee concluded that proper notice had been given to the employer, we must determine whether substantial evidence exists in the record to support such a finding.[5] *Katz, supra.*

After careful review of the record, we conclude that, even if we had accepted claimant's theory that a psychiatric injury occurred in August of 1975, there was no proper notice of such given to the employer. If we look at the situation in the light most favorable to the claimant and assume that the claimant himself did not know of his psychiatric disability in August of 1975, then Section 311 of the Act, 77 P.S. §631, establishes that the time for giving notice does not begin to run until the claimant knows, or should know, of the injury and its relation to his employment. *Workmen's Compensation Appeal Board v. Paris Neckwear Co.,* 22 Pa. Commonwealth Ct. 543, 350 A.2d 212 (1976). Claimant testified that Dr. Sulman, the general practitioner, "could not find my condition" and, therefore,

---

[5] As the Board points out in its decision, the referee actually made no "Finding of Fact" concerning the notice requirement. The referee did, however, state as his first "Conclusion of Law" that "[p]roper and adequate notice under the Act was given by the claimant to the employer of his injury and disability." Normally the lack of a factual finding concerning notice requires remand for an appropriate finding. *Phillips v. North American Coal Co.,* 27 Pa. Commonwealth Ct. 103, 365 A.2d 453 (1976). Here, however, since the issue was obviously considered and decided by the referee, his presumable mislabling of the finding does not preclude our review of the matter.

458

he was referred to Dr. Guest.[6] It is after seeing Dr. Guest in October of 1975 and being diagnosed by this psychiatrist as suffering from a post-traumatic neurosis that claimant knew, or should have known, of his psychiatric injury and its relation to his employment. Notice, then, should have come within 120 days of this diagnosis by Dr. Guest. ARCO's actual knowledge of the claimant's physical injuries from the 1970 fire would not be adequate notice of claimant's resulting post-traumatic neurosis five years later. There is no evidence in the record that ARCO was either given timely notice by the claimant or by Dr. Guest or had actual knowledge of what type of injury occurred, whether it had occurred in the course of employment, and when it had occurred.[7] Notice or actual knowledge of all of these elements is necessary. *Padilla, supra.*

---

[6] The only indication in the record that ARCO might have been informed of claimant's treatment after he left work in August of 1975 is a statement by Dr. Sulman that the company doctor requested Dr. Sulman's report on the claimant's condition. At the hearing, however, counsel for ARCO did not have a copy of the report. The report stated Dr. Sulman's diagnoses as essential hypertension, post-traumatic neurosis, and decompensation of the musculo-skelletal accommodation. Dr. Sulman admitted, however, in his testimony that he was not competent to describe the claimant's psychiatric problems because he was not a psychiatrist. In view of this, even if ARCO did receive this report, a report from a general practitioner to ARCO is not evidence enough to support a finding that ARCO was put on notice of the occurrence of a psychiatric injury to the claimant and its relation to his employment.

[7] In fact, claimant's actions and statements to ARCO would belie the fact that any compensable injury had occurred. Claimant was sent home from work after the company doctor determined he had extreme high blood pressure. Claimant testified he didn't come back to work because his physical condition would not allow him to perform the required outside duties. He also testified that this physical condition was the reason given to his superior for his inability to return to work. Furthermore, sometime after August, 1975, he informed ARCO he was retiring and started receiving a disability pension from them.

Finally, in terms of the purposes of the notice requirement, when dealing with the subjective nature of mental illness as an injury, the notice requirement becomes even more important in guarding the employer from stale or fraudulent claims and promoting psychologically, as well as physically, safe working environments.

The Board, therefore, correctly concluded that the referee's findings, with respect to the occurrence of a psychiatric injury in August of 1975 and notice thereof, were not supported by the record.

Accordingly, we enter the following

ORDER

AND Now, this 18th day of December, 1980, the order of the Workmen's Compensation Appeal Board, Docket No. A-74981, denying benefits to Daniel Thomas is affirmed.