Donald E. Kitchen, Petitioner *v.* Workmen's Compensation Appeal Board (Mesta Machine Co.), Respondents.

Submitted on Briefs March 3, 1983, to Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*Ronald J. McKay,* for petitioner.

*Stuart W. Benson, III,* for respondents.

OPINION BY JUDGE CRAIG, April 6, 1983:

Donald Kitchen appeals from a Workmen's Compensation Appeal Board order affirming a referee's dismissal of Mr. Kitchen's claim petition under section 301(c) of The Pennsylvania Workmen's Compensation Act.[1] We affirm.

On May 26, 1978, Mr. Kitchen, a craneman for Mesta Machine Company, filed a claim petition alleging disability because of pulmonary fibrosis contracted from exposure to silica in the company's foundry. The referee dismissed that 1978 claim petition on the basis of medical testimony that Mr. Kitchen was not suffering from silicosis, and that any impairment of pulmonary function was the result of cigarette smoking; the board affirmed that decision on March 22, 1979.[2]

Mr. Kitchen filed a second petition on April 5, 1979, contending that he is disabled because of an anxiety neurosis which causes him to believe that he suffers from silicosis.

Specifically, the record reveals that Mr. Kitchen began to undergo a profound personality change some-

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411.

[2] Mesta Machine Company contends that we should dismiss Mr. Kitchen's current claim under the doctrine of res judicata. *McCarthy v. Township of McCandless,* 7 Pa. Commonwealth Ct. 611, 300 A.2d 815 (1973). We disagree. The subject matter and the ultimate issues to be decided here are not identical to the subject matter and issues decided in 1979. Mr. Kitchen based his initial claim on silicosis; here he has grounded his claim upon a psychiatric disorder.

time after April 12, 1978, when a sandhose near his crane broke, creating a dust storm of silica in the foundry. Sickened by inhalation of the dust, Mr. Kitchen reported to the plant physician who advised him to take eight days off; the claimant tried to return to work on April 18, 1978 but testified that he was unable to do so. On April 18, or shortly thereafter, he received the results of x-rays taken earlier at McKeesport Hospital, causing him to believe that he suffered from silicosis. Then, according to his testimony, "the whole bottom fell out."

According to the deposition testimony of Mr. Kitchen's treating psychiatrist, Dr. David L. Ravella, Jr., the claimant suffers from severe anxiety neurosis with periodic episodes of gross paranoia. As to the cause of Mr. Kitchen's illness, Dr. Ravella testified that exposure to silica dust for over twelve years in the foundry, the claimant's illness in April of 1978, and being led to believe that he had silicosis "at the very least . . . severely aggravated his [Mr. Kitchen's] condition and most probably was responsible for it."[3] Dr. Ravella also testified that Mr. Kitchen's "fixed paranoid delusion" became more pronounced as his workmen's compensation hearings approached.[4]

---

[3] Testifying in rebuttal to Dr. Finkelhor's report, Dr. Ravella also made the following observation:

Q. What do you think is the cause [of Mr. Kitchen's psychiatric disorder]?

A. I think the original cause of illness was becoming convinced he had silicosis. And that represented such a damaging trauma to his sense of his own integrity, his own physical integrity that he began a spiraling downhill course until, for the last six to eight months, perhaps even for the last twelve months, he has been totally disabled.

[4] On May 20, 1980, Dr. Ravella testified that most, if not all, of Mr. Kitchen's attention has been directed towards "what he feels over the last couple of years to be almost a conspiracy directed against him by almost everyone who has come in contact with him in relation to this compensation hearing."

At the request of the company, Dr. Howard B. Finkelhor, a board-certified psychiatrist and neurologist, examined Mr. Kitchen on February 26, 1980. Basing his report upon that examination and upon a review of Dr. Ravella's records, Dr. Finkelhor concluded that Mr. Kitchen suffers from an agitated depression with paranoid features, but that his illness is not causally related to his employment:

> The question of causation might superficially seem to have some relationship to his employment but a more careful assessment excludes this possibility. The following reasoning seems appropriate.
>
> As best as I can determine from general information . . . the patient's location in the mill was in a crane located in the upper strata, and therefore above the level of significance to any silica. Nevertheless the patient seems to have built up a certain amount of feeling or concern about the matter—and I would suspect that anger rather than fear was the more important emotion. His accusation that his union representatives would not take his side in the matter and would not help him seems difficult to reconcile with the known toughness of the Union of which he was a member—as witness their five-month strike. During that five-month hiatus in work, during which he would have been free of exposure, he should be expected to improve, if his allegations are as stated. But he seems to have continued to worsen, and become more depressed and symptomatic. This is particularly interesting because it suggests that there were factors outside of work over which he was concerned.
>
> Developing and exerting control of emotions is the responsibility of every adult person. Cer-

tain kinds of stress—death, bereavement and varied kinds of losses—are often associated with a temporary loss of emotional control. Protests, objections or squawks which an individual may have about a loss or a situation of life or work are not the obligatory or intrinsic effects of that situation or of that stress. They are individual reactions, (e.g., not all persons would necessarily have the protest-response), and therefore cannot be inherently due to the stress. Such emotional reactions cannot therefore be blamed on the situation.

Finding Dr. Finkelhor's report more credible than the testimony of Dr. Ravella, the referee concluded that Mr. Kitchen's psychiatric disorder was not work-related and accordingly dismissed the claimant's petition.

Where, as here, the party with the burden of proof has not prevailed below, we limit our scope of review to determining if the findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence. *Stewart v. Workmen's Compensation Appeal Board*, 62 Pa. Commonwealth Ct. 351, 353, 436 A.2d 1043, 1044 (1981). Moreover, where the board has taken no additional evidence, the referee is the ultimate factfinder as to the credibility and weight to be given conflicting evidence, including medical evidence. *Id.* at 354, 436 A.2d at 1045.

Mental illness can be a compensable injury if it arises in the course of employment and is related to it. *Serafin v. Workmen's Compensation Appeal Board*, 62 Pa. Commonwealth Ct. 413, 416, 436 A.2d 1239, 1240 (1981) (case remanded to determine if assault, which was precipitating event of claimant's psychoneurosis, occurred in course of employment). *See also Hepp v. Workmen's Compensation Appeal*

*Board,* 67 Pa. Commonwealth Ct. 330, 447 A.2d 337 (1982) (acute psychiatric episode occurring in employee's home following receipt of notice of discharge not work-related); *Mrs. Smith Pie Co. v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 274, 426 A.2d 209 (1981) (blindness caused by hysterical conversion occasioned by work-related accident, is compensable injury); *Thomas v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 449, 423 A.2d 784 (1980) (claimant's nervous reaction to fire, a non-work-related event, not compensable); *University of Pittsburgh v. Perlman,* 49 Pa. Commonwealth Ct. 347, 405 A.2d 1048 (1979) (psychotic depressive reaction, which resulted in suicide, compensable when competent and unequivocal testimony established injury as work-related).

Where, as here, there is no obvious causal relationship between a claimant's work and his injury, he must present unequivocal medical testimony to establish the causal connection. *Haney v. Workmen's Compensation Appeal Board,* 65 Pa. Commonwealth Ct. 461, 442 A.2d 1223, 1225 (1982) (proper standard is whether, based upon thorough review of entire record, medical testimony, taken as a whole, is sufficiently unequivocal to support finding for claimant).

A careful review of Dr. Ravella's deposition and rebuttal testimony, however, reveals his opinions to be equivocal as to the cause of Mr. Kitchen's psychiatric disorder. As noted above, Dr. Ravella variously ascribed Mr. Kitchen's illness to his work in the foundry, to the silica dust storm in April of 1978, to a subsequent diagnosis of silicosis, and to the workmen's compensation hearings themselves. As we observed in *Thomas v. Workmen's Compensation Appeal Board,* because of the highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed, **55 Pa.**

Commonwealth Ct. at 455, 423 A.2d at 787; clearly, that was not the case here.

Moreover, even if we were to find that Mr. Kitchen has met his causation burden, the referee was free to accept the report of Dr. Finkelhor, which stated unequivocally that Mr. Kitchen's illness is not work-related. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977) (if evidence accepted by referee is such as reasonable mind might accept as reasonable to support conclusion, court precluded from disturbing referee's findings, even in presence of other evidence to contrary.)

Accordingly, we affirm.[5]

### ORDER

Now, April 6, 1983, the order of the Workmen's Compensation Appeal Board, Docket No. A-80407, is affirmed.

---

[5] Mesta Machine Company also contends that we should affirm the dismissal of Mr. Kitchen's claim petition because he allegedly failed to meet the 120-day notice requirement under section 311 of the Act, 77 P.L. §631. Because we today uphold the board's order on the basis that Mr. Kitchen's psychiatric disorder is not work-related, we need not reach the notice issue.