621 A.2d 1173

Katherine STAROSCHUCK, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD
(MIDLAND ROSS CORP.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 6, 1992.

Decided Feb. 18, 1993.

Alexander J. Pentecost, for petitioner.

Raymond F. Keisling, for respondent.

Before DOYLE and FRIEDMAN, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by Katherine Anne Staroschuck, (Claimant) from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision denying Claimant's review petition.

Claimant, while lifting a box, strained her lower back on January 29, 1979, in the course of employment. Midland Ross

Corp. (Employer)[1] issued a Notice of Compensation Payable on July 20, 1979, indicating that Claimant was disabled as of April 1, 1979. Pursuant to The Pennsylvania Workmen's Compensation Act,[2] Claimant began receiving total disability compensation on April 8, 1979. A Final Receipt of Compensation dated July 23, 1979, indicates that Claimant was able to return to work without loss of earning power. A supplemental agreement dated December 2, 1982 indicates that Claimant's disability recurred on May 20, 1982.

Claimant was treated for her initial back injury by Dr. Thomas Cowan, who diagnosed Claimant's injury as a ruptured disc. Following her return to work, Claimant began experiencing increasingly severe pain starting in May of 1982 and when noninvasive treatment failed, Dr. Cowan performed a laminectomy, the removal of a vertebra, upon Claimant on June 1, 1982. Noting Claimant's anxiety and depression, Dr. Cowan referred Claimant to her family physician, who in turn referred her to Dr. Harry Wrobeleski, a psychiatrist. Dr. Wrobeleski first met Claimant on April 8, 1983, and after a series of interviews, diagnosed Claimant as having a generalized anxiety disorder. Dr. Wrobeleski prescribed an antidepressant for the anxiety disorder and treated Claimant in outpatient therapy from April 8, 1983, to July 31, 1985, approximately once a week. Claimant discontinued treatment with Dr. Wrobeleski because she was unable to pay his bills herself and the Employer refused to pay them.

On June 14, 1985, Claimant filed a review petition alleging that Employer had not met its commitment to pay for Claimant's psychotherapy. Employer's answer, dated January 13, 1986, denied that the therapy was causally related to Claimant's work-related injury and, further, denied that Employer had made any commitment to pay for the therapy. After a hearing and depositions, referee Robert J. Steiner, by Order of August 31, 1987, dismissed Claimant's review petition. The referee found that Claimant failed to carry her burden of

1. Employer is self-insured, although the compensation benefits are administered by an independent insurance company, ESIS.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

proof in establishing the causal connection between the psychotherapy and the back injury sustained in the course of employment. Claimant appealed to the Board. By Opinion and Order of November 23, 1988, the Board remanded the case to the referee because the Board read the referee's opinion as placing the burden of proof upon Claimant to establish the reasonableness of the medical bills, rather than on Employer to show that the medical costs were unnecessary or unreasonable.

On remand, Claimant again deposed Dr. Wrobeleski attempting to establish the causal connection between her psychological condition and her work injury. In addition, on April 29, 1987, Claimant filed a Petition for Penalties alleging that since July 2, 1986, her compensation checks were arriving late. This issue was also considered by the referee at the remand hearing. The referee dismissed Claimant's review petition because Claimant again failed to overcome her burden of proof to establish the causal connection between her therapy treatment and her work-related injury. The referee found the testimony of Dr. Wrobeleski, which now unequivocally stated that Claimant's condition was precipitated by her work injury, contradicted Dr. Wrobeleski's previous testimony, and the referee thus rejected the new testimony.

Further, the referee denied Claimant's penalty petition because Claimant failed to meet her burden of proving that Employer was at fault for sending benefits checks late. The referee found that the checks were mailed in a timely fashion and that any delay was due to the fault of the United States Post Office, not the Employer's claim administrator. Claimant appealed and the Board, by Opinion and Order dated April 30, 1992, affirmed the referee's decision on both issues. Claimant has appealed from the Board's decision to this Court.

The first issue for review is whether the Board and referee erred in concluding that the expert medical testimony given by Claimant's treating psychiatrist was equivocal and did not constitute sufficient competent evidence that Claimant's psychotherapy treatment was causally related to her work-related injury of January 29, 1979. Where the causal

connection between the employment incident and the injury is not obvious, proving the causal connection through unequivocal testimony is the claimant's burden. *Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.)*, 133 Pa.Commonwealth Ct. 532, 576 A.2d 421 (1990). Psychiatric injuries are compensable, but, due to the subjective nature of psychiatric injuries, the injury and its cause must be adequately pinpointed. *Thomas v. Workmen's Compensation Appeal Board (Atlantic Refining Co.)*, 55 Pa.Commonwealth Ct. 449, 423 A.2d 784 (1980). The Claimant argues that her expert's testimony, read as a whole, met that burden.

Although issues of credibility and evidentiary weight are to be determined solely by the referee, who may accept or reject the testimony of any witness, in whole or in part, the determination that certain medical testimony is equivocal is a conclusion of law and is thus fully reviewable. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 508 Pa. 360, 498 A.2d 800 (1985). Referee Steiner, in an excellent opinion, clearly enumerated both his duty and his reason for finding Claimant's expert testimony equivocal. Finding of Fact No. 11 of the referee's decision on remanded review states in pertinent part, that:

Although your referee is not required to accept uncontradicted testimony as credible, where the party with the burden of proof is the only party to present medical evidence,[3] the referee must explain the reason for rejecting the uncontradicted medical evidence. As referred to in the previous finding of fact, your referee must reject the testimony of Dr. Wrobeleski as given in the November 13, 1989, deposition as being contradictory and inconsistent with his prior deposition testimony given on June 18, 1986, and notes that once the claimant was given "the second bite of the apple" by the Workmen's Compensation Appeal Board Or-

3. Employer did present medical evidence on the issue in the form of a letter from Dr. Thomas W. Sheridan, a psychiatrist who had examined Claimant at employer's request. His letter was attached to Employer's Petition for Hearing De Novo. Dr. Sheridan diagnosed Claimant as suffering from depression which predated the injury of January 29, 1979.

der of November 23, 1988, Dr. Wrobeleski only then gave the necessary medical opinion of causal relationship which your referee must reject as credible due to its inconsistency with the prior testimony....

A close reading of Dr. Wrobeleski's testimony confirms the referee's analysis. In the June 18, 1986, deposition Dr. Wrobeleski stated under direct examination:

Q. Doctor, as a result of your own professional experiences, the history you took from Katherine and your diagnosis, did you form an opinion with reasonable medical certainty as to the relationship between the back injury and the problem you diagnosed?

A. [O]n the basis of that history, the medical records, plus what she told me, plus my observations of her here in the office when I met her, they would *appear* to be chronologically related, that her anxieties continued to rise after the operation which was supposed to help her and continued. So, that would be how I see the relationship. (Emphasis added).

Dr. Wrobeleski testified further cross-examination:

Q. [D]id you consider that this lady could be a malingerer?

A. Always. I think that's one of the major parts of differential diagnosis. There may have been some malingering there, but I think it's possible but unlikely....

Q. This patient does not have a post-traumatic stress disorder?

A. It's something that I considered in the differential diagnosis, but felt that I couldn't do that because I was not with her at the time of the accident and the subsequent three or four years, so on the basis of the history, one might consider that as a potential diagnosis, but personally, I couldn't document it and that's why I went to the generalized anxiety disorder because what I heard was progressive intense building of anxiety that was becoming chronic.

In the second deposition, on direct examination, Dr. Wrobeleski testified more specifically:

Q. Doctor, do you have an opinion within a reasonable degree of medical certainty, based on the history the patient gave you, as to what was the cause of the diagnosis?

A. I do.

Q. And what is it, Doctor?

A. That there is, on the basis of the history and the data I received, a definite relationship between the generalized anxiety and the symptoms of the injury.

Q. Doctor, was the injury the cause, in your opinion?

A. It was the precipitating cause.

But under cross-examination, Dr. Wrobeleski testified in the following manner:

Q. You mentioned the injury as a causative factor. Do you believe there are other causative factors with respect to her generalized anxiety disorder?

A. I think that the personality of this lady was in some ways a predisposition in the sense that she was a good person who had experienced traumas prior in her life. But the precipitating injury seemed to trip off some of these deeper concerns.

Q. And it's true is it not, that you did not diagnose a post-traumatic stress disorder in this individual?

A. That's true. I diagnosed on the basis of the symptoms she presented, for the criteria, a generalized anxiety disorder. But post-traumatic stress has become a more focused diagnosis since that time. There are many criteria that weren't met by that particular disorder, although stress created anxiety for her. But I think if you look at the diagnostic criteria, conceivably it could fit. But I'm not sure at that time, the criteria warranted that diagnosis, although there might have been....

A diagnosis that merely states that the work-related injury "could be" the cause of the claimant's condition has long been held to be legally insufficient to establish the causal relation-

ship between an injury and a work related incident. *Lewis.* Here Dr. Wrobeleski's testimony went from describing the work injury in his first deposition as *appearing* to be causally related to the psychiatric disorder to describing it as the "precipitating cause" of the disorder in his second deposition. It is clear that the testimony given by Dr. Wrobeleski after the Board's remand was sufficiently different from his previous testimony to justify the referee's rejection of it.

Our analysis cannot end there; we must inquire whether Claimant's psychiatric disorder was compensable, accepting Dr. Wrobeleski's initial testimony. An early case discussing disorders similar to that of Claimant is *Thomas,* in which a claimant was burned in a refinery fire in 1970 and subsequently began experiencing anxiety over being burned again. After the claimant watched a news broadcast of a refinery fire in 1975, he soon suffered a breakdown and filed for compensation based on his reaction to the broadcast. Although a disorder from the original fire in 1970 might have been compensable, this Court held that observation of the broadcast, which triggered the breakdown was not work related. For the breakdown to be compensable without further physical injury, claimant would have had to prove that abnormal working conditions had triggered the breakdown. *Bevilacqua v. Workmen's Compensation Appeal Board (J. Bevilacqua Sons),* 82 Pa.Commonwealth Ct. 511, 475 A.2d 959 (1984). However this Court did imply that a psychiatric disorder caused by claimant initially being burned would be compensable. *Thomas* at 453–54, 423 A.2d at 787. Psychiatric disorders which are triggered by work-related physical injury are compensable.

Claimant's psychiatrist diagnosed her as having a generalized anxiety disorder. An anxiety neurosis (or disorder) is defined as "[a]n illness characterized by apprehension, irritability, and gloomy forebodings." *Am.Jur.2d, Proof of Facts, Fact Book with Medical Glossary,* Part IV at 897. Dr. Wrobeleski attributed much of the anxiety to Claimant's experiences during her lifetime, even suggesting she was "predisposed" to such a disorder. Upon further questioning Dr. Wrobeleski, in both depositions, consistently refused to diag-

nose Claimant as having a post-traumatic stress disorder. Post-traumatic stress disorder is a neurosis causing similar symptoms as a general anxiety disorder, but it is brought on by a specific event. *Id.* Post-traumatic stress is defined as:

A syndrome, q.v., consisting of several groups of symptoms, most particularly a preoccupation with and relieving [sic] of *the triggering traumatic events*, anxiety, depression, insomnia, and recurrent nightmares (directly or indirectly involving the precipitant events), intrusive morbid thoughts, social withdrawal, hyperalertness, and a marked startle response, difficulty concentrating and consequent memory impairment, psychic numbing, constricted affect and reduced responsiveness in ordinary activities, and avoidance of actual or symbolic reminders of the traumatic events which might intensify symptoms.... (Emphasis added.)

*Id.* at 1065. Therefore, post-traumatic stress disorder is by definition causally related to the triggering injury, which if it is work related, would be compensable.

The contrast between anxiety and post-traumatic stress disorders is significant because if the Claimant's illness was triggered by her work-related injury as Dr. Wrobeleski claimed with such certainty in his second deposition, post-traumatic stress disorder should have been the more likely diagnosis. This is simply further indication that Dr. Wrobeleski initially did not believe that Claimant's psychiatric disorder was triggered by her work-related injury or did not have sufficient facts to prove a diagnosis of post-traumatic stress disorder. Dr. Wrobeleski's statement that post-traumatic stress was a possible diagnosis is clearly legally insufficient to establish the requisite causation. Thus, the referee made the call and rejected Dr. Wrobelski's testimony on remand.

Because Claimant was unable to prove that her psychiatric disorder was work related, it is not compensable. And, therefore, Employer was never obligated to pay the medical bills for the psychiatric treatment since they were incurred in treating a psychiatric condition not causally related to the work injury. *King v. Workmen's Compensation Appeal Board (Wendell H. Stone Co.)*, 132 Pa.Commonwealth Ct. 292,

572 A.2d 845 (1990). *Hilton Hotel Corp. v. Workmen's Compensation Appeal Board (Totin)*, 102 Pa.Commonwealth Ct. 528, 518 A.2d 1316 (1986). The absence of Employer's duty to pay for the course of treatment in this case, distinguishes it from the scenario addressed in *Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck and Co.)*, 104 Pa.Commonwealth Ct. 175, 521 A.2d 503 (1987) *(Glinka II), petition for allowance of appeal denied,* 516 Pa. 644, 533 A.2d 714 (1987), in which this Court held that the employer need not pay medical expenses that were simply unreasonable or unnecessary. The instant case is also distinguishable from *Johnson v. Workmen's Compensation Appeal Board (Albert Einstein Medical Center)*, 137 Pa.Commonwealth Ct. 176, 586 A.2d 991 (1991), where this Court held that the employer must pay even unreasonable medical bills until the referee finds them to be unreasonable, because the treatment administered in *Johnson*, unlike here, was causally related to the work injury.

■ The Claimant next argues that the Board and the referee erred in not assessing a penalty against Employer for consistent late mailing of Claimant's compensation checks. Section 435 of the Act authorizes the assessment of a penalty for failure to pay compensation promptly. 77 P.S. § 991. Here, Employer's personnel responsible for mailing the checks testified that the checks were timely mailed and offered into evidence computer printouts confirming the timely mailing of the checks. On the basis of this evidence, the referee found that the delay in Claimant's receipt of the checks was due to her local post office and the Board agreed. Based on the evidence in the record, we find that referee's decision was based on substantial evidence.

Based on the foregoing discussion, the decision of the Board is affirmed and Claimant's appeal is dismissed.

### ORDER

NOW, February 18, 1993, the decision of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed and Claimant's appeal is dismissed.