640 A.2d 494

**James F. PITKAVISH, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (PULLMAN STANDARD), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 1994.

Decided April 5, 1994.

Richard G. Spagnolli, for petitioner.

James A. Mazzotta, for respondent.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

James Pitkavish petitions this Court for review of a Workmen's Compensation Appeal Board (Board) order affirming the referee's decision to dismiss his penalties petition as well as employer Pullman Standard's review petition.[1]

Pitkavish suffered a neck injury on January 16, 1980 while in the course of his employment with Pullman Standard (Pullman). A notice of compensation payable was filed on February 4, 1980. On May 23, 1990, Pullman filed a review petition alleging that it was not responsible for payment of a $165.00 psychotherapy bill Pitkavish submitted to it because there was no causal connection between the treatment and Pitkavish's work-related injury. On May 29, 1990, Pitkavish filed a petition for penalties and counsel fees alleging that Pullman failed to pay the outstanding bill although he had provided it with a doctor's report establishing a causal connection. The referee consolidated the petitions. He dismissed Pullman's review petition except to the extent that he awarded payment for Pitkavish's psychotherapy treatment. He also dismissed Pitkavish's penalties petition, deciding that there was a reasonable basis for the contest.

Pitkavish first argues that the referee erred in permitting Pullman to "unilaterally suspend and contest" payment of his medical bills [2] where he provided it with medical evidence that the treatment was connected to his work injury, and where Pullman did not investigate pursuant to Section 406.1 of the

---

1. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or necessary findings of fact were unsupported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

2. In Finding of Fact No. 9, the referee found that Pitkavish had submitted $110.00 as the amount of medical costs still owed by Pullman to Dr. Louis K. Hauber of the Center for Behavioral Medicine. Moreover, Pitkavish submitted $676.77 as the amount he was due to be reimbursed by Pullman for money he paid to Dr. Hauber and Brooks Pharmacy.

Act,[3] 77 P.S. § 717.1, whether those bills were connected to his work injury.

As evidence that his psychotherapy treatment was related to his work injury, Pitkavish provided Pullman with a March 13, 1990 initial intake report completed by Joe Acklin, M.A., M.S.W., of the Center for Behavioral Medicine. Mr. Acklin's report stated in pertinent part that "Mr. Pitkavish appears to be exhibiting symptoms of a Major Depression. The onset of this depression indicates a direct link with his injury at work." Pitkavish maintains that this report, together with the $165.00 bill from the Center for Behavioral Medicine, was sent to Pullman's insurance carrier in March or April of 1990 and, consequently, Pullman should have paid the bill. Pitkavish admits, however, that "[t]he exact date upon which the insurance carrier received this bill and the exact information which the insurance carrier had in its possession at that time are unclear." (Petitioner's brief, p. 5)

Pitkavish also points out that a June 19, 1990 report completed by Dr. Zafar I. Chowdhry was sent to Pullman's insurance carrier as evidence that Pitkavish needed psychotherapy treatment. Dr. Chowdhry's report stated:

> Mr. Pitkavish has been under my treatment for quite a while. When last seen he was complaining of severe headaches, neck pain and chronic pain syndrome. He was given a prescription for Fiorinol III to be used prn for the headaches. At that time he was also advised to see Dr. Hauber for supportive psychotherapy as I think he would benefit from this treatment. If any further information is needed to clarify the needed [sic] for the psychotherapy, please don't hesitate to contact my office. Thank you.

Both Dr. Chowdhry's and Mr. Acklin's reports were introduced into evidence before the referee—Dr. Chowdhry's report was introduced as Claimant's Exhibit No. 7 on July 25, 1990 and Mr. Acklin's report was introduced as Claimant's Exhibit No. 3 on November 9, 1990.

**3.** The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

As well, at the November 9, 1990 hearing, Pitkavish submitted an October 24, 1990 report completed by Dr. Louis K. Hauber. In his report, Dr. Hauber said in relevant part that he felt "with a reasonable degree of medical certainty that Mr. Pitkavish's depression is certainly related to his work injury and the subsequent disability."

Therefore, Pitkavish asserts, at the very latest Pullman should have paid his psychotherapy expenses as of November 9, 1990, based on the three reports it undoubtedly had in its possession at that time. Pitkavish also claims that the September 10, 1990 report by Dr. Robert Durning, Pullman's medical expert, is of no moment since Dr. Durning's conclusion that Pitkavish was not in need of psychotherapy treatment related back to his examination of him in October of 1989, *before* psychotherapy treatment was recommended by Pitkavish's experts. Pitkavish also stresses that Dr. Durning's report does not address the issue of causation.

In support of his argument that Pullman should have paid his psychotherapy expenses before the referee's order to that effect, Pitkavish maintains:

The claimant in a workers' compensation case does not have a burden and is not required to retain counsel and commence litigation to establish the causal relationship between a claimed medical expense and a work injury, where there is no obvious causal relationship between the two. The Claimant submits that the Workmen's Compensation Act places a burden on the Employer to promptly investigate the causal relationship between a claimant's medical expense and the claimant's work injury, once the claimant has provided some evidence that a challenged medical expense is related to claimant's work injury. In this case, the Claimant presented several medical reports to the Employer. Each establishing that Claimant's psychotherapy expenses were related to his work injury, yet the Employer failed to pay those medical expenses without any contrary medical evidence to support its decision. Although the precise time at which the Employer had possession of the Claimant's medical reports is unclear. Certainly by November of 1990, the Claimant

had presented such evidence, and still the employer refused to pay those expenses despite its failure to produce medical evidence to contradict the causal relationship between the expenses and the work injury.

(Petitioner's brief, pp. 12–13)

■ According to Pitkavish, under Section 406.1 of the Act, Pullman was required to promptly investigate his injury and promptly pay his claimed medical expenses for psychotherapy treatment.[4] We agree with Pullman, however, that this section of the Act is not applicable here, where a notice of compensation payable was effectuated in 1980 and where Pitkavish is requesting payment of expenses for medical treatment that is not obviously related to his work injury. Furthermore, Pitkavish claims that, pursuant to Section 306(f)(ii) of the Act, 77 P.S. § 531(2)(ii), Pullman was required to pay his medical expenses during the pendency of its review petition. We remain unconvinced that this argument has merit where, as Pullman urges, the question is one of causal connection between the treatment giving rise to the medical expenses and the work injury, and is not a matter "of the necessity or frequency of treatment or reasonableness of fees for services provided by a physician or other duly licensed practitioner of the healing arts."[5]

4. Section 406.1 of the Act, 77 P.S. § 717.1 provides in part:

The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407, on forms prescribed by the department and furnished by the insurer. The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability. Interest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum. Any payment of compensation prior or subsequent to an agreement or notice of compensation payable or greater in amount than provided therein shall, to the extent of the amount of such payment or payments, discharge the liability of the employer with respect to such case. (Footnote omitted.)

5. Section 306(f)(ii) of the Act, 77 P.S. § 531(2)(ii) affords:

The employer shall have the right to petition the department for review of the necessity or frequency of treatment or reasonableness of

In *Hilton Hotel Corporation v. Workmen's Compensation Appeal Board (Totin)*, 102 Pa.Commonwealth Ct. 528, 518 A.2d 1316 (1986), we were confronted with a case in which a claimant who had suffered a work-related back injury wished her employer to pay medical bills arising out of treatment for her depression. We said:

> Where ... there is no obvious causal relationship between the injury giving rise to the medical expenses claimed and the accident or other catalyzing injury giving rise to the original disability, "unequivocal medical testimony [is] required to prove causation." Workmen's Compensation *Appeal Board v. Bethlehem Mines Corp.*, 22 Pa.Commonwealth Court 437, 439, 349 A.2d 529, 530 (1976) (ultimately holding that involved injury was so "immediately and directly, or naturally and probably, the result of an accident ... [that] the factfinder [was] not required to depend alone, or at all, upon medical testimony to find the causal connection."). See also *Zoltak v. Keystone–Harmony Dairy*, 47 Pa.Commonwealth Ct. 378, 379, 408 A.2d 198, 199 (1979).
>
> . . .

We believe that in a case such as this unequivocal medical testimony is necessary to demonstrate causation. It is manifest, we believe, that psychological disorders such as suicidal tendencies and depression are not the "immediate and direct" or "natural and probable" consequences of a lumbosacral strain. Compare generally *Kitchen v. Workmen's Compensation Appeal Board*, 73 Pa.Commonwealth Ct. 289, 294, 458 A.2d 631, 634 (1983) (where disability is alleged to be due to work-related mental stimulus, injury must be proven by unequivocal medical evidence adequately pinpointing the cause). We note also that the fact that the present claim is for medical expenses rather than monies for loss of earning power is irrelevant; employers are, under

fees for services provided by a physician or other duly licensed practitioner of the healing arts. Such a petition shall in no event act as a supersedeas, and during the pendency of any such petition the employer shall pay all medical bills if the physician or other practitioner of the healing arts files a report or reports as required by subparagraph (I) of paragraph (2) of this section.

the Act, liable for injuries arising in the course of employment and related thereto, and where new, seemingly unrelated "non-natural and non-probable" symptoms develop, allegedly stemming from such injuries, unequivocal medical testimony is required to establish the nexus.

*Id.,* 102 Pa.Cmwlth. at 532–534, 518 A.2d at 1318–1319. (Footnotes omitted.) *See also Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.),* 133 Pa.Commonwealth Ct. 532, 576 A.2d 421 (1990).

Moreover, we have stated that an employer cannot be required to pay a claimant's medical expenses arising out of treatment for a disability which is unconnected to his original work injury. *See Staroschuck v. Workmen's Compensation Appeal Board (Midland Ross Corp.),* 153 Pa.Commonwealth Ct. 523, 621 A.2d 1173 (1993).

■ In the case at bar, Pitkavish contends that he should not have been subjected to litigation of this issue but that, once he submitted medical reports to Pullman's insurance carrier which purportedly established a causal relationship between his psychotherapy treatment and his neck injury, Pullman should have paid the psychotherapy expenses automatically. This argument is flawed for two reasons: 1) even Pitkavish is unclear as to whether Pullman had the reports of his experts before its review petition was filed; and 2) unequivocal medical testimony establishing a relationship between Pitkavish's mental condition and his original work-related neck injury must not only be presented, it must be accepted as credible by the referee. Because there could be no finding of a causal connection until one was made by the referee, Pullman was not required *before that time* to pay medical expenses for treatment of a condition which was not the "natural and probable" or "immediate and direct" consequence of his work injury.

■ Second, Pitkavish asserts that the referee erred in deciding that Pullman had a reasonable basis to contest his psychotherapy expenses since he submitted reports which showed a causal connection between the treatment giving rise

to those bills and his work injury. The matter of whether a contest is reasonable is a question of law reviewable by this Court. *Hill v. Workmen's Compensation Appeal Board (Lentz Milling Company)*, 146 Pa.Commonwealth Ct. 524, 527, 606 A.2d 614, 615 (1992). It is the employer's burden to show that the contest was reasonable. *Id.*

We have examined the record and are satisfied that the referee's and the Board's disposition of this issue does not require reversal. This is especially so because Pitkavish sustained his neck injury at work *ten* years before he was evaluated as a candidate for psychotherapy treatment, and depression is not naturally and probably or immediately and directly the result of a neck injury, even where a *short* span of time has passed. Because Pullman met its burden of proof that the contest was reasonable, the Board was right to affirm the referee's denial of attorney fees pursuant to Section 440 of the Act, 77 P.S. § 996.

Affirmed.

### ORDER

AND NOW, this 5th day of April, 1994, the order of the Workmen's Compensation Appeal Board, No. 91–1892, dated February 25, 1993, is affirmed.