Crystal **RODGERS**, Petitioner,

v.

**PENNSYLVANIA STATE POLICE,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1999.

Decided Sept. 13, 2000.

Brian M. Puricelli, Newton, for petitioner.

Joanna N. Reynolds, Harrisburg, for respondent.

BEFORE: DOYLE, President Judge, FLAHERTY, Judge, McCLOSKEY, Senior Judge.

DOYLE, President Judge.

Crystal Rodgers (Claimant) appeals from an order of the Commissioner of the Pennsylvania State Police (Commissioner), denying her claim for benefits under the Heart and Lung Act (Act)[1] because he concluded that her mental injury was not the product of abnormal working conditions.

Claimant enlisted with the Pennsylvania State Police (PSP) on September 5, 1980. On August 29, 1996, Claimant stopped working based on what she characterized as work-related stress. Claimant received treatment from Dr. James Nelson from November 1996 through June 1997, and he diagnosed her with "Major Depression Disorder." Dr. Nelson's diagnosis was based solely on the information provided to him by Claimant. This information can be summarized as follows.

In 1989, Claimant filed a Human Relations Commission (HRC) complaint because she alleged that she had not been selected for a voluntary "Driving Under the Influence" enforcement program, which would have earned her overtime pay. This matter was settled to the satisfaction of all parties.

Claimant filed two subsequent HRC complaints because she was the focus of an internal affairs investigation. These were also settled, and no discipline was taken against her.

In 1991, Claimant alleges that she was humiliated when a superior officer accused her of being improperly attired for a court appearance; and that the PSP, after this incident, instituted a policy which required all Troopers to wear their uniform at all court appearances.

In 1993, Claimant filed another HRC complaint based on allegations that two superior officers were trying to get her fired due to reports of her being absent without leave and failure to turn in her reports on time. These complaints were either dismissed or found in favor of the Department. Claimant received no discipline regarding these matters.

On another occasion, Claimant requested to take home a patrol vehicle between shifts. Claimant and her supervisors disagreed as to this policy and, as a result, the Troop Commander instituted a policy that no Trooper would take home patrol vehicles between shifts. This, of course, caused resentment within the rank and file. However, no discipline was taken against Claimant.

In 1993, Claimant was detached to work in the highly desired position of drug law enforcement. Claimant alleges that she was harassed when she was ordered to turn in her drug buy money when she was transferred to the Philadelphia region. It was determined that this was a clerical error and was corrected on the same day. Claimant was therefore not ordered to turn in the money.

Claimant further alleges that she was singled out regarding the use of a Com-

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638.

monwealth credit card. However, there was testimony that indicated that *other personnel* as well as Claimant were all sent a letter regarding the proper use of the card.

Claimant also alleges that she was harassed for not being allowed to have her vehicle serviced in Harrisburg, rather than Philadelphia, as other members of the drug team were permitted to do.

In June 1996, Claimant alleges that she was harassed when her Commanding Officer told her not to wear sunglasses during a training class. Claimant produced a doctor's note the next day and the Commander evidently considered the case closed. However, Claimant sent the Commander a letter indicating how humiliated she was in that everyone in the class knew that she was reprimanded. As a result, Claimant filed another HRC complaint.

In August 1996, Claimant was terminated from the drug team and was ordered to return to Troop S Harrisburg. Claimant alleges that she was singled out for the earlier incident regarding the sunglasses. As a result, Claimant viewed this as harassment and amended her previous HRC complaint to include this incident.

In response to the above incidents, which Claimant described to Dr. Nelson, he determined that she suffered a psychological injury caused by "unusual job-related stressful events." As a result, Claimant never returned to duty.

Thereafter, Claimant applied for Heart and Lung Benefits pursuant to Section 1(a) of the Act, 53 P.S. § 637(a). On No-

vember 25, 1996, the PSP denied her claim. Claimant appealed this decision and a hearing was conducted before a hearing examiner.[2] At the hearing, Claimant and her doctor testified to the incidents which are outlined above. The PSP offered the testimony of the Department Disciplinary Officer and the Director of the Drug Law Enforcement Unit, who testified regarding the incidents alleged by Claimant. Furthermore, each side introduced numerous exhibits. On September 22, 1998, the hearing examiner submitted his proposed report and recommendation in which he concluded that Claimant was ineligible for benefits under the Act because she failed to establish that her mental injury was caused by abnormal working conditions and that her injury did not arise out of the performance of her duties. On January 4, 1999, the Commissioner determined that Claimant was ineligible for benefits under the Act because she failed to prove that her injuries resulted from the performance of her duties, and this appeal followed.

On appeal to this Court,[3] Claimant asserts that there is sufficient evidence to establish that she sustained a psychological injury while in the performance of her duties; therefore, she is entitled to Heart and Lung benefits. Furthermore, Claimant contends that the Act should be strictly construed, and as a result, this Court should not apply the mental/mental [4] analysis which is used in workers' compensation cases to this case.

First, it is important to note that the Act provides full compensation to State Police

2. Claimant contends that the PSP provided an arbitrator instead of a hearing examiner. The record intermittently refers to the use of both terms, hearing examiner and arbitrator. For clarity, we will use the term hearing examiner. Later in this opinion, we will address Claimant's argument concerning this contention.

3. Our standard of review in an appeal from a final order of a Commonwealth agency is limited to determining whether an error of law was committed, constitutional rights were

violated, or whether necessary findings of fact are supported by substantial evidence. *Brandt v. Pennsylvania State Police*, 159 Pa. Cmwlth. 66, 632 A.2d 986 (1993), *petition for allowance of appeal denied*, 537 Pa. 668, 644 A.2d 1204 (1994).

4. The mental/mental analysis is used in workers' compensation law as the standard to establish that a psychological injury is a compensable disability; such an injury must be caused by abnormal working conditions.

Officers, as well as other identified public employees, who sustain temporary disabilities during the performance of their duties. The Act provides, in pertinent part, "[a]ny member of the State Police Force ... who is injured in the performance of his duties, ...and by reason thereof is temporarily incapacitated from performing his duties ..." is entitled to such benefits. 53 P.S. § 637(a).

It is undisputed that the incidents which preceded her treatment with Dr. Nelson occurred while she was in the performance of her duties. The critical questions, therefore, are what additional elements must a claimant prove in order to establish that he or she suffered a compensable psychological injury, and did the claimant in this case meet that burden of proof. This case appears to be one of first impression, as we are called upon to decide whether the mental/mental standard of proof, which was adopted in workers' compensation law, shall likewise be utilized in Heart and Lung cases.

Claimant argues that she is required only to establish that she suffered a psychological injury. This ignores, however, the subjective nature of psychological injuries and the need to use a more objective criteria to determine a causal relationship between the employment activity and the psychological injury and disability.

In *Thomas v. Workmen's Compensation Appeal Board,* 55 Pa.Cmwlth. 449, 423 A.2d 784 (1980), this Court held that an employee's subjective reaction to normal working conditions was not sufficient to establish a compensable injury. We noted that, "[d]ue to the highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed." *Id.* at 787.

This Court outlined the test for the mental/mental standard of proof, along with its reasoning, in *Russella v. Workmen's Compensation Appeal Board,* 91 Pa.Cmwlth. 471, 497 A.2d 290 (1985), *petition for allowance of appeal denied,* 516 Pa. 637, 533

A.2d 95 (1987), wherein we stated, in pertinent part:

> Because psychiatric injuries are by nature subjective, we believe that if a claimant has met his burden of proving the existence of a psychiatric injury, he cannot rely solely upon his own account of his working environment to sustain his burden of proving that the injury was not caused by a subjective reaction to normal working conditions. A claimant's burden of proof to recover workmen's compensation benefits for a psychiatric injury is therefore twofold; he must prove by *objective* evidence that he has suffered a psychiatric injury and he must prove that such injury is other than a subjective reaction to normal working conditions.

*Id.* at 292 (emphasis added). Furthermore, our Supreme Court has cited with approval our analysis of the mental/mental standard of proof in *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990), wherein the Court stated:

> The Commonwealth Court's approach was intended to distinguish psychiatric injuries that are compensable because the necessary causal relationship between the employment and mental disability has been established from those psychiatric injuries that arise from the employee's *subjective reactions to normal working conditions.* The phraseology "abnormal working conditions" has developed into a shorthand expression for that critical distinction.

*Id.* at 518, 568 A.2d at 164. (emphasis added). The reason for this heightened burden is because there is usually an absence of any outward manifestation or objective identification of the injury. *See Young v. Workers' Compensation Appeal Board (New Sewickley Police Department),* 737 A.2d 317 (Pa.Cmwlth.1999). As our Supreme Court has pointed out, if we were to award benefits based on the employee's subjective perception of what caused his mental illness, it "would reduce workmen's compensation benefits to noth-

ing more than a disability or death benefit payable only because of the employee status of the claimant—and not because the injury was *caused* by his employment." *Martin,* 523 Pa. at 519, 568 A.2d at 165 (emphasis added).

■ In response to whether this Court should adopt the mental/mental standard in Heart and Lung cases where a psychological injury is caused by psychological stimuli, Claimant contends that the Act must be strictly construed and, therefore, the test is simply whether the injury resulted from the performance of one's duties. Claimant discusses at length the differences between the Workers' Compensation Act[5] and the Heart and Lung Act and is correct to point out that the two Acts seek different purposes. For example, the Workers' Compensation Act provides compensation for both temporary and permanent disabilities and the underlying purpose is one of accident insurance while in the scope of employment. *See Colyer v. Pennsylvania State Police,* 165 Pa.Cmwlth. 41, 644 A.2d 230 (1994). The Heart and Lung Act, on the other hand, provides full compensation to important public safety personnel while only temporarily disabled by an injury which has occurred in the performance of duty. *See Colyer.* It is a mistake, however, for Claimant to suggest that the Heart and Lung Act may not borrow standards from the Worker's Compensation Act to determine eligibility of benefits, because the same difficulty of proof exists in determining whether the injury was caused by the work place experience itself, or was so subjective an injury that it could have been caused by any stress related experience and was always present in the person of the claimant and was simply triggered by what would be for anyone else, our common everyday work experiences.

■ The mental/mental standard utilized in Workers' Compensation cases is, admittedly, a judicial doctrine developed to clarify the cause and effect of a psychological injury and the claimant's work experience due to the subjective nature of psychological injuries, and we conclude, it is as applicable in the development of claims under the Heart and Lung Act as it was in the development of the law in workers' compensation claims. Accordingly, we so adopt it.

We also observe that the Heart and Lung Act is, in fact, much narrower than the Workers' Compensation Act. *See Allen v. Pennsylvania State Police,* 678 A.2d 436 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 546 Pa. 696, 687 A.2d 379 (1997). It would be an untenable dichotomy to require a claimant under the Heart and Lung Act, which is much narrower in scope, to carry a lesser burden in proving a mental/mental injury, while a claimant under the Workers' Compensation Act, which is much broader in scope, must sustain a greater burden in proving the same type of mental/mental injury. If this were the case, the award of benefits under the Heart and Lung Act would be far easier to obtain than benefits awarded under the Workers' Compensation Act for the same type of injury.[6] This result is unsustainable.

Therefore, in sum, we hold that in Heart and Lung cases, where a claimant suffers a psychological injury caused by psychological stimuli while in performance of his or her duty, the claimant must prove that such injury is other than a subjective reaction to normal working conditions.

Before we reach the merits on the facts in this case, we must address Claimant's contention that this Court's decision in *Colyer* controls the instant case. In *Colyer,* the claimant was a Pennsylvania State

---

5. Act of June 2, 1915, P.L. 736, 77 P.S. §§ 1–1041.4.

6. It must be noted that the Claimant applied for and was denied workers' compensation benefits because it was determined that she did not suffer a work-related injury. *See* R.R. at 39a.

Police Trooper who was the subject of an internal police investigation. The claimant was accused of tampering with evidence while working a crime scene and was advised of his constitutional rights and informed that he could be arrested. Over the following weeks, the claimant was continually questioned and threatened with arrest; the investigation, however, revealed no evidence of wrongdoing.

The claimant was eventually hospitalized and diagnosed as having acute major depression. He continually missed numerous days at work due to his condition. When the claimant applied for Heart and Lung benefits, the PSP denied his claim on the grounds that he was not injured "in the performance of his duties." On appeal, this Court was called upon to determine the sole issue of whether the claimant's injuries arose in the performance of his duties. We held that the claimant's participation in the investigation, and the injuries stemming therefrom, did occur while in the performance of his duties. In that determination we did not address what standard of proof should be utilized when a psychological injury is caused by psychological stimuli. That issue was neither addressed below nor was it preserved for appeal.

Claimant in the instant case argues that since Coyler was granted benefits after he suffered a psychological injury, then benefits should be granted in this case. Claimant, however, ignores the fact that in *Colyer*, that issue was never decided. The only issue decided in *Colyer*, which is relevant to this case, was that his participation in the investigation occurred in the performance of his duties. As in *Colyer*, the activities which led up to Claimant's injuries in this case also occurred in the performance of her duties. However, the analysis does not stop there, for we must determine, as we addressed above, whether that psychological injury occurred from abnormal working conditions. Only if this prong is satisfied will a claimant in a Heart and Lung case be granted benefits when a psychological injury is caused by psychological stimuli.

 Although the events listed above, which preceded Claimant's injuries, occurred during the performance of her duties, Claimant simply has not established, nor is there substantial evidence in the record to support a finding, that her injuries were anything more than a subjective reaction to normal working conditions. To recover for a psychological injury caused by a mental stimulus, or a "mental/mental" injury, the claimant must prove either: (1) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time; or (2) that abnormal working conditions over a longer period of time caused a psychiatric injury. *See Young.*

The actual incidents which Claimant described here were found to be the normal operation of the Pennsylvania State Police, and Claimant's testimony regarding these incidents transformed minor incidents into major allegations of harassment, humiliation and disparate treatment.

The record reveals that Claimant was never disciplined over any of these incidents and there is no adverse information in her personnel file. Furthermore, her performance evaluations have been in the acceptable range and she was even selected for a prestigious assignment on the drug law enforcement unit. These facts simply do not support a finding that her supervisors were out to harass her, and also do not support a finding that she was subjected to abnormal working conditions which contributed to her psychological injuries. Her injuries appear to simply be subjective reactions to normal working conditions while employed with the PSP.

After reviewing the record, we conclude that the Commissioner's findings are supported by substantial evidence, and therefore, hold that Claimant failed to establish that her psychological condition was a re-

sult of abnormal working conditions while performing her duties for the PSP.

Next, we address Claimant's contention that the PSP denied her due process of law. Specifically, Claimant argues that (1) she had asked for a hearing examiner and the PSP provided an arbitrator, (2) the hearing examiner was biased because he was a former member of the Chief Counsel's office, and (3) she was not provided with the identities of the PSP's witnesses, its evidence, or an opportunity to present her witnesses at the hearing. We will address these contentions seriatim.

First, it is important to note that in *Victor v. Department of Labor and Industry*, 166 Pa.Cmwlth. 663, 647 A.2d 289 (1994), we stated that, "Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a), requires that a party may not raise an issue on judicial appeal that has not been raised before the administrative agency." *Id.* at 293.

Claimant argues that she requested a "hearing examiner" and yet was provided an "arbitrator" and, on the appeal form, Claimant marked the box indicating that she preferred a hearing examiner. Claimant argues that the PSP provided an "arbitrator" instead of a "hearing examiner," but nowhere in her brief does she make clear the difference between an arbitrator and a hearing examiner, or how this difference may have prejudiced her. The hearing examiner in this case was Spencer Manthrope, Esq. and he is referred to as a hearing examiner in the record. Accordingly, we must assume that he is, in fact, a hearing examiner in the absence of any facts to the contrary, or, even more basic to our determination of the issue raised by Claimant, what she alleges the difference is. Nowhere is that explanation given by Claimant. Finally, our review of the record reveals that this issue was never brought up before or during the hearing, and is thus deemed waived.

Next, Claimant argues that the hearing examiner was biased and incompetent to conduct this hearing. Claimant does not develop this argument in her brief, except to state that the hearing examiner used to work in the Chief Counsel's office. This mere allegation is insufficient to prove bias and incompetence. Furthermore, this argument was not raised at the hearing before the hearing officer, and therefore this issue likewise is deemed waived.

Finally, Claimant argues that she was not provided with the identities of certain PSP witnesses, its evidence, or an opportunity for Claimant to present her own evidence. However, Claimant, in her brief, does not make clear what evidence or documents or witnesses the PSP refused to provide. Claimant absolutely makes no citation to the record to support this proposition. Furthermore, a review of the record further indicates that this issue also was not preserved for appeal.

In *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981), our Supreme Court stated that:

> Adjudicatory action cannot be validly taken by any tribunal, whether judicial or administrative, except upon a hearing wherein each party has opportunity to know of the claims of his opponent, to hear the evidence introduced against him, to cross-examine witnesses, to introduce evidence on his own behalf, and to make argument.

*Id.* at 464, 431 A.2d at 948. It is clear from the record that Claimant had a full hearing in which she was offered an opportunity to introduce evidence on her own behalf, cross-examine opposing witnesses, and make argument. Due Process is satisfied where the claimant is afforded notice and an opportunity to be heard. Claimant was provided notice, a full hearing, and an opportunity to be heard. Therefore, Claimant's due process rights were not violated in this case.

Accordingly, the Commissioner's Adjudication is affirmed.

## ORDER

NOW, September 13, 2000, the order of the Commissioner of the Pennsylvania State Police in the above-captioned matter is hereby AFFIRMED.