**Kim HEATH, Petitioner**

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 8, 2004.

Decided Feb. 24, 2005.

Joseph F. Bouvier, Philadelphia, for petitioner.

Tara L. Patterson, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Kim Heath (Claimant) petitions for review of a decision of the Pennsylvania Board of Probation and Parole (Board) which denied her benefits under the "Heart and Lung Act".[1] We affirm for the reasons set forth below.

Claimant was employed by the Board as a parole agent at Graterford Prison (Graterford). Claimant's immediate supervisor at Graterford was Calvin Ogletree, Jr. (Ogletree), whose immediate supervisor was James Newton (Newton). Claimant testified that the following occurred: In October of 1997, Newton asked Claimant to join him at a casting call for an Oprah Winfrey movie, thus beginning a course of conduct whereby Newton subjected Claimant to attention she did not seek and sought to discourage. Claimant declined Newton's invitation, but within the week he invited Claimant to a concert at which Newton's brother would be performing. Again, Claimant declined. Shortly thereafter Newton telephoned Claimant to invite her to another show; Claimant again declined. Newton then proceeded to discuss his personal issues and problems, at which point Claimant ended the call. In January of 1998, Claimant found an envelope on her desk with a ticket for another show of Newton's brother. Claimant spoke to Newton's brother, who also worked at Graterford, and he explained that Newton asked him to give her the ticket. Claimant did not attend the show.

Newton's conduct did not abate. Once, also in January of 1998, a love song came on the radio at work, prompting Newton to move up close to Claimant and express his opinion that it was a "sexy, sweet" song. Reproduced Record 27a. Newton also developed such habits as standing behind Claimant at her desk and making sucking sounds and sitting near Claimant's desk and staring at her. When Claimant asked if there was something he wanted, Newton would start a personal conversation. Claimant would then advise him that she was busy with work in an effort to end the conversation. On one occasion, Newton asked Claimant for her home address and telephone number. (R.R. at 29a). Claimant responded that her supervisor, Ogletree, had this information if it were ever needed.

Following Claimant's continued rebuffs of these overtures, Newton began to burden Claimant with additional work assignments, which required her to put aside her normal caseloads and to fall behind. When informed, Ogletree expressed surprise to learn that Newton was giving assignments to Claimant without his

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638

knowledge and stated that he would talk to Newton about it. (R.R. at 29a–30a).

On February 10, 1998, Newton asked Claimant to attend a meeting in his office, which was not located at the prison, on Friday, February 13, 1998. He refused to respond to Claimant's inquiry about the meeting's purpose; Claimant objected and stated that she might bring union representation to the meeting. Newton responded by telling her that union representation was not necessary. When Claimant persisted with her inquiry, Newton became irate. (R.R. at 30a–31a). Claimant complained to Ogletree, who agreed to speak to Newton.

On Thursday, February 12, 1998, near the end of the day, Newton gave Claimant a memo ordering her to attend the meeting at his office the following day and that union representation would not be permitted. Newton did not advise Ogletree of the meeting, but Claimant did. On February 13, 1998, Claimant went to the meeting accompanied by Ogletree and her union president, who was not allowed into Newton's office. At the meeting, Newton told Claimant that he wanted the meeting so he could tell her that she was doing a great job. When Claimant brought up the subject of Newton's harassment of her, Newton refused to respond and abruptly ended the meeting. (R.R. at 33a–36a).

On or about February 18, 1998, Claimant filed a grievance with her union regarding Newton's harassment. Within a week, Newton tried to lure Claimant into Ogletree's empty office on the stated pretext that she needed a second photo identification card; there was no such need. (R.R. at 39a–40a). That day, Claimant spoke to the Board's Affirmative Action Officer, LaDelle Ingram (Ingram), and shortly thereafter, on March 4, 1998, Claimant presented Ingram with a written complaint of sexual harassment against

Newton. Ingram informed Newton that he was not to have any contact with Claimant. Despite this warning, Newton called Claimant's direct line at work on at least two separate occasions. (R.R. at 49a).

Soon after presenting her sexual harassment complaint, Claimant testified that she received a written warning from an inmate that her life was in danger. Claimant attempted to admit this note into evidence, but the Board registered a hearsay objection. The WCJ requested some foundation testimony before ruling on the objection, and Claimant testified that the note came through interagency mail, which inmates can use to send mail to parole officers. Claimant stated that after receiving the warning she asked the inmate how another inmate could hurt her, and the inmate responded that it was the corrections officers that were out to get her. The WCJ sustained the Board's hearsay objection and noted that "at this point I don't have enough to have this go to the employee's conduct. You may have to take the testimony of the inmate at this point to get that in." (R.R. at 48a). Claimant's attorney stated that he was going to attempt to obtain more evidence. However, Claimant did not present any further evidence in this regard. Some time later, Claimant sought a job transfer to a different location, and on April 1, 1998, Claimant was told to report to a Philadelphia District Office. She did, but for the next month, she lacked a desk and had almost no work. Further, she was not issued a weapon, as required by the Board's policy. (R.R. at 54a–55a).

Claimant began experiencing anxiety, which was manifested in chest pains, heart palpitations and anxiety attacks. Claimant contacted a State Employee Assistance Program and was referred to a psychologist, Suzanne Baxter, M.A. (Baxter) for treatment. Baxter saw Claimant the next

day and testified that she put her out of work due to acute stress disorder, caused by a feeling of lack of support from her employer and failure to protect her from Newton's unwanted advances. Within a week, Claimant also saw Richard Watson, D.O. (Dr. Watson), an employer approved "panel" physician. Dr. Watson agreed with Baxter's diagnosis of acute stress disorder and her direction that Claimant not return to work due to an undue amount of stress. (R.R. at 138a–139a).

The Board refused Claimant workers' compensation benefits for the stated reason that Claimant did not suffer a work-related injury and did not give notice of her alleged injury to employer within one hundred and twenty days.[2] On or about June 24, 1998, Claimant filed a claim petition alleging that as of May 1, 1998, she sustained a disabling psychological injury in the form of stress anxiety while in the course of her employment as a parole agent, which resulted from the sexual harassment by Newton and the retaliatory acts of her employer. On August 10, 1998, the Board filed an answer denying the allegations contained in the claim petition.

On November 6, 1998, the Board offered Claimant a position at a new facility in Chester as one of two institutional parole agents. On December 11, 1998, the Board sent Claimant a release to sign as a condition to being allowed to return to work. This release required Claimant to give up all claims against the Board, including her pending workers' compensation claim and sexual harassment claims. Claimant refused to sign the release. (R.R. at 410a–413a).

By letter dated January 4, 1999, the Board informed Claimant that she had to return to work by January 11, 1999 or risk termination. Claimant returned to work as instructed and reported to her assigned supervisor, Bonnie Ferguson (Ferguson) who informed Claimant she had no knowledge that Claimant would be reporting for work. Claimant testified that she was given very few work assignments. After reviewing Claimant's activity sheets, which indicated that she had no work, Ferguson instructed Claimant not to make such entries because they would jeopardize her ability to receive her paycheck. (R.R. at 892a). Another parole agent, Stanley Webb (Webb), verbally assaulted Claimant, screaming at her that if she did not like her job, then she needed to leave. (R.R. at 878a).

By February 5, 1999 Claimant's anxiety again forced her to leave her new position with the Board. On February 8, 1999, Claimant's treating psychologist, Baxter, wrote to Claimant's supervisor and informed her that Claimant was unable to continue work due to her medical condition. By letter dated March 3, 1999, the Board directed Claimant to: (1) return to work by March 15, 1999; (2) apply for disability retirement; or (3) resign from her employment. Claimant, through counsel, sent the Board a response on March 11, 1999 stating that due to her on-going medical condition and her unwillingness to retire or resign from her employment, she would not be returning to work on March 15, 1999. On April 16, 1999, Claimant's employment was terminated.

Claimant filed for compensation benefits under the Workers' Compensation Act. In a series of hearings before the Workers' Compensation Judge (WCJ) on her 1998 claim petition, Claimant testified on her own behalf and submitted the deposition

**2.** Section 311 of the Workers' Compensation Act (Act), Act of June 2, 1915 P.L. 736, *as amended*, 77 P.S. § 631, requires that an employee give notice to an employer within 120 days of a work-related injury.

transcripts of Baxter and Dr. Watson. Claimant also submitted the testimony of three factual witnesses: Rennin McCrey, Gloria Hamilton and Ogletree. The Board, in response, presented the testimony of Newton, Ferguson and Webb; it also submitted the deposition of Jon Bjornson, M.D. (Dr. Bjornson), a psychiatrist.

On March 6, 2001, the WCJ found that Claimant had sustained a work-related injury as a result of abnormal working conditions. On February 25, 2002, the Board reversed. It reasoned that:

Claimant provided no corroborative testimony that these occurrences were actual incidents of harassment. She presented no witnesses to testify that they witnessed the incidents and that they too believed Claimant was being harassed by Mr. Newton. Although she did present the testimony from Mr. Ogletree, the Judge found that Mr. Ogletree stated that he never observed any interaction between Mr. Newton and the Claimant that was less than professional, although Mr. Ogletree did indicate that Claimant was given assignments from Mr. Newton which was not in accordance with the processes of the parole unit ... Claimant also presented testimony of Ms. McCrae and Ms. Hamilton, but again, both only witnessed Mr. Newton talking to Claimant and Ms. Hamilton "did not notice anything unusual" ...

(Board's Decision at 9). With regard to the other conditions that Claimant alleges contributed to her mental injury, the Board stated that the WCJ "also concluded that because Claimant was placed into a different job after she requested a transfer where she was given few assignments and no desk or office, this was also an abnormal working condition. As we believe this happens in the work place on occasion, this too was not an abnormal working condi-

tion." Board's Decision at 10. Claimant appealed seeking reversal of this order. By decision dated November 25, 2002, we affirmed the decision of the Board denying Claimant benefits, although we affirmed the Board on different grounds. Specifically, we concluded that when a co-employee, or third party, sexually harasses an employee, any resulting mental injury is not compensable under the Act because Section 301(c)(1), which is commonly known as the "personal animus" exception, operates to remove any claim for that injury from the purview of the Workers' Compensation Act.

Claimant appealed our decision to the Supreme Court. In a decision dated October 20, 2004, the Supreme Court vacated our decision and remanded this case to us. Specifically, the Supreme Court stated that:

... As the "personal animus" exception is not jurisdictional, it is not an issue for a court to raise *sua sponte* ... Rather ... the party defending against the claim for workers compensation is to raise the exception ... In this case, however, that party, *i.e.*, Employer, did not do so. In *Rox Coal Co. v. Workers' Compensation Appeal Board (Snizaski)*, 570 Pa. 60, 807 A.2d 906 (2002), we held that waiver principles will be applied in a workers' compensation setting and ruled that another statutory exception to the definition of compensable injury in Section 301(c) was waived by a party's failure to raise it. Thus, Employer's failure to raise the "personal animus" exception means that the issue was waived. *Id.* at 911–14. It necessarily follows that the exception should have played no part in the Commonwealth Court's review in the present case.

For these reasons, we vacate the Commonwealth's Court's order and remand this case for the court to reconsid-

er the merits of Claimant's appeal from the Board's decision. The court is to reconsider whether Claimant proved her claim with regard to Newton's actions. Likewise, insofar as the Commonwealth Court's application of the "personal animus" exception may have affected its review of the Claimant's claim that she was entitled to compensation under the Act for certain actions that were taken by Employer after she reported Newton's conduct, the Court's is to reconsider that claim.

*Heath v. Workers' Compensation Appeal Board, (Pennsylvania Bd. of Probation and Parole),* —— Pa. ——, 860 A.2d 25, 30 (2004).

Therefore, in accordance with the Supreme Court's order, we proceeded to address the merits of Claimant's appeal from the Board's decision. By decision dated February 9, 2005, we again affirmed the decision of the Board denying Claimant benefits.

Earlier, in May of 1998, the Board had determined that Claimant did not sustain any injury that was compensable under the Heart and Lung Act. Claimant appealed this decision on June 22, 1998. However, a hearing was not conducted until March 24, 2003. The hearing examiner concluded that, pursuant to the doctrine of collateral estoppel, Claimant must be denied benefits under the Heart and Lung Act because she had already been denied benefits under the Workers' Compensation Act. Accordingly, the hearing examiner recommended that Claimant be denied Heart and Lung Act benefits. By order dated September 5, 2003, the Board adopted the proposed findings of fact and conclusions of law of the hearing examiner and accord-

ingly denied Claimant benefits under the Heart and Lung Act. Claimant's appeal to this Court followed.[3]

On appeal, Claimant argues that the Board erred in denying Claimant benefits under the Heart and Lung Act because she had been denied benefits under the Workers' Compensation Act. The Board argues that Claimant is barred from receiving Heart and Lung Act benefits by the principle of collateral estoppel.

■ Initially, we note that the purpose of the Heart and Lung Act is to provide a full salary, not compensation, to employees in certain dangerous occupations who have been injured on the job and who are expected to recover and return to work in the foreseeable future. This Act, however, is not a replacement for workers' compensation benefits. If an employee's injury is found to be "permanent" rather than temporary, that employee should not continue to receive benefits under the Heart and Lung Act but should properly receive workers' compensation benefits. *See Cunningham v. Pennsylvania State Police,* 510 Pa. 74, 80, 507 A.2d 40, 43 (1986) and *Sidlow v. Township of Nether Providence,* 153 Pa.Cmwlth. 390, 621 A.2d 1105, 1110 (1993) (concurring opinion).

With regard to the principle of collateral estoppel, in *Kohut v. Workmen's Compensation Appeal Board (Township of Forward),* 153 Pa.Cmwlth. 382, 621 A.2d 1101 (1993), *petition for allowance of appeal denied,* 535 Pa. 650, 633 A.2d 154 (1993), this Court stated that:

> Under the principle of collateral estoppel or issue preclusion "[w]here a question of fact essential to the judgment is actually litigated and determined by a

**3.** Pursuant to Section 704 of the Administrative Agency Law, our scope of review is limited to determining whether the agency's decision is supported by substantial evidence, whether it committed an error of law or whether it violated the appellant's constitutional rights. 2 Pa.C.S. § 704.

valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action." *McCarthy v. Township of McCandless,* 7 Pa.Commonwealth Ct. 611, 619, 300 A.2d 815, 820 (1973) (quoting Restatement of Judgments § 70 (1942)) ... The judgment in the prior action operates as estoppel in the second action, however, only as to those issues that (1) are identical (2) were actually litigated (3) were essential to the judgment and (4) were material to the adjudication.

Id. at 1103.

In *Rodgers v. Pennsylvania State Police,* 759 A.2d 424 (Pa.Cmwlth.2000), *petition for allowance of appealed denied,* 565 Pa. 658, 771 A.2d 1292 (2001), this Court stated that:

It is a mistake, however, for Claimant to suggest that the Heart and Lung Act may not borrow standards from the Worker's Compensation Act to determine eligibility of benefits, because the same difficulty of proof exists in determining whether the injury was caused by the work place experience itself, or was so subjective an injury that it could have been caused by any stress related experience and was always present in the person of the claimant and was simply triggered by what would be for anyone else, our common everyday work experiences.

. . .

we hold that in Heart and Lung cases, where a claimant suffers a psychological injury caused by psychological stimuli while in performance of his or her duty, the claimant must prove that such injury is other than a subjective reaction to normal working conditions.

Id. at 429.

In *Yonkers v. Donora Borough,* 702 A.2d 618 (Pa.Cmwlth.1997), this Court recognized that when a claimant's benefits have been terminated under the Workers' Compensation Act, the principle of collateral estoppel precludes that claimant from receiving benefits under the Heart and Lung Act. In that case, a workers' compensation judge terminated the claimant's benefits, and the claimant appealed. While that appeal was pending, a hearing was conducted by the employer to determine whether the claimant's Heart and Lung Act benefits should also be terminated. Employer determined that the WCJ's decision was conclusive as to the claimant's disability and determined that the claimant was able to return to work. The claimant appealed the employer's decision to the court of common pleas, and employer filed preliminary objections in the nature of a demurrer asserting that the WCJ's decision collaterally estopped the claimant from relitigating the nature of his disability. The court of common pleas agreed with the employer and dismissed the claimant's appeal.

On appeal to this Court, the claimant did not argue that the four factors for the application of collateral estoppel did not apply. Rather, the claimant argued that the decision of the WCJ was not a final judgment for the purposes of collateral estopped because he filed a timely appeal with the Board. In our decision, we cited *Kohut* and recognized that issues decided in a proceeding involving Heart and Lung Act benefits are binding in a subsequent workers' compensation proceeding on the basis of collateral estoppel. In addition, we disagreed with the claimant that the WCJ's decision was not final. Accordingly, because the decision of the WCJ was a final decision, we held that the principle of collateral estoppel did apply and we affirmed the order of the court of common pleas.

■ In the workers' compensation portion of this case, we held that Claimant was not entitled to benefits under the Workers' Compensation Act for psychological injuries she alleges she sustained while working for the Board. That decision is final and binding. Claimant is now seeking benefits under the Heart and Lung Act for those same alleged injuries. However, the standard of proof regarding whether Claimant is entitled to benefits for those psychological injuries is identical under both the Workers' Compensation Act and the Heart and Lung Act. *Rodgers.* Because the issue regarding whether Claimant proved that she was subjected to abnormal working conditions and whether she presented evidence to corroborate whether those conditions existed were actually litigated during the workers' compensation proceedings, were essential to the judgment and were material to the adjudication, we must conclude that the principle of collateral estoppel precludes Claimant re-litigating whether she is entitled to benefits for those injuries under the Heart and Lung Act.[4] Therefore, the Board did not err by denying Claimant benefits under the Heart and Lung Act.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, February 24, 2005, the order of the Pennsylvania Board of Probation and Parole dated September 5, 2003 is hereby AFFIRMED.

Dissenting opinion by PELLEGRINI, J.

PELLEGRINI, Judge, dissenting.

I respectfully dissent from the majority decision because it is directly contrary to other opinions of this Court. We have consistently held that collateral estoppel does not apply, even when the issue is identical between administrative agencies, because each agency enforces different laws that have different policy considerations. In the end, "who" decides matters.

In this case, Kim Heath (Claimant) was employed by the Pennsylvania Board of Probation and Parole (Parole Board) as a parole agent at Graterford Prison. She filed a claim petition for workers' compensation under the Workers' Compensation Act alleging that she was repeatedly sexually harassed by her immediate supervisor

4. In *Cantarella v. Department of Corrections/SCI Waymart*, 835 A.2d 870 (Pa.Cmwlth. 2003), *petition for allowance of appeal denied,* 578 Pa. 702, 852 A.2d 313 (2004), the claimant was granted workers' compensation benefits by a WCJ on the grounds that she suffered a work-related injury caused by abnormal working conditions. While the decision regarding Claimant's workers' compensation benefits was on appeal, this Court upheld the denial of Act 632 benefits by DOC from an injury alleged to have been caused by abnormal working conditions because the inmate's touching of the buttocks of the claimant was not an abnormal working condition for the claimant, who was a food-service worker. Specifically, we rejected the claimant's argument that, because she was food-service worker rather than a corrections officer, a lesser standard of abnormality should be used in deciding whether she was exposed to ab-

normal working conditions. In dicta and in a footnote, *Cantarella* also states that collateral estoppel was inapplicable because the issue involved a distinction between Act 632 benefits and workers' compensation benefits. We do not believe that *Cantarella* mandates a different result in the case *sub judice,* as there is no distinction here as there was in *Cantarella.* Rather, the issue is the same: whether Claimant was exposed to abnormal working conditions. In addition, we note that neither *Rodgers* nor *Yonkers* were cited by the majority in *Cantarella (Yonkers* was cited by the dissent), which was filed on the same day that this Court reversed the granting of benefits in the workers' compensation aspect of the *Cantarella* case. *See Department of Corrections/SCI–Waymart v. Workers' Compensation Appeal Board (Cantarella),* 835 A.2d 860 (Pa. Cmwlth.2003), *petition for allowance of appeal denied,* 578 Pa. 703, 852 A.2d 314 (2004).

which caused her to experience anxiety that manifested into chest pains, heart palpitations and anxiety attacks. She was treated by two psychologists and ultimately was forced to leave her position. The Workers' Compensation Judge (WCJ) found that Claimant sustained a work-related injury as a result of abnormal working conditions, but on appeal, the Workers' Compensation Appeal Board (WCAB) reversed, finding that there was no corroborative testimony of the alleged occurrences of harassment. The WCAB also found that even though Claimant had been placed into a different job after she requested a transfer, and there was no desk or office with few assignments, this also did not constitute an abnormal working condition. On appeal to this Court, we affirmed but on different grounds. Claimant appealed to the Supreme Court which vacated our decision and remanded the matter to us to reconsider whether Claimant proved her claim with regard to the sexual harassment claim.

On remand, the majority affirmed the WCAB, noting that in May of 1998, it had been determined by the administrative process of the Parole Board that Claimant had not sustained any injury that was compensable under the Heart and Lung Act. It further noted that Claimant had appealed that decision on June 22, 1998, but a hearing was not held until March 24, 2003. At that time, the hearing examiner determined that because Claimant had already been denied benefits under the Workers' Compensation Act (Act), the doctrine of collateral estoppel applied and he recommended that she be denied benefits under the Heart and Lung Act. The Parole Board adopted that finding and denied Claimant benefits under the Heart and Lung Act. Claimant appealed that denial to this Court which is now before us.

The majority reasons that because the WCAB found that Claimant was not enti-tled to workers' compensation benefits under the Act for psychological injuries she alleged she sustained while working for the Parole Board, she was collaterally estopped from seeking benefits from the Parole Board under the Heart and Lung Act for those same alleged injuries, especially when the standard of proof regarding whether Claimant was entitled to benefits for those psychological injuries was identical under both of those acts. I disagree because the doctrine of collateral estoppel does not preclude a claimant from seeking benefits from the Parole Board under the Heart and Lung Act, even when denied benefits by the WCAB under the Act.

The reason there can be no collateral estoppel between administrative agencies is because every administrative agency in the Commonwealth must be allowed to enforce its own acts. Each agency has to be able to make its own decisions based upon its own expertise. If collateral estoppel was allowed, one agency's hands would be tied by the findings and conclusions of another's without being allowed to make independent findings and conclusions and applying its own expertise to the facts. Therefore, even if it means granting benefits to a claimant by one agency under one act when they have been denied to that same claimant by another agency under another act, it is better to have two different outcomes than to forego the rights of independent fact finding by an administrative agency under one of its own acts. *See Cantarella v. Department of Corrections,* 835 A.2d 870 (Pa.Cmwlth.2003); *Bortz v. Workers' Compensation Appeal Board (Reznor Division of Florida Industries),* 656 A.2d 554 (Pa.Cmwlth.1995), *affirmed,* 546 Pa. 77, 683 A.2d 259 (1996); *Schanz v. Bureau of Correction,* 52 Pa.Cmwlth. 300, 415 A.2d 978 (Pa.Cmwlth.1980).

Also, we recently dealt with a similar fact pattern that led to a similar result in

48 ■

*Scierka v. Department of Corrections, State Correctional Institution at Dallas,* 852 A.2d 418 (Pa.Cmwlth.), *petition for allowance of appeal denied,* —— Pa. ——, 860 A.2d 491 (2004). In that case, the claimant, a female psychological services specialist employed at SCI–Dallas, was counseling a male inmate when he reached through the bars of his cell and touched her right breast while she was taking notes. She filed a claim with the Parole Board for benefits under its Act 632[1] alleging a psychiatric injury. She also filed a claim for workers' compensation benefits with the Department of Labor. While her claim was pending before the Parole Board, a WCJ granted her claim petition for a psychic injury. The Parole Board ultimately denied her claim for a psychic injury and denied her benefits. She filed an appeal to this Court arguing that the doctrine of collateral estoppel precluded the Parole Board from making contrary findings to those of the WCJ. Relying on *Cantarella,* also a case with similar facts, we held that the "doctrine of collateral estoppel does not preclude the [Parole Board] from making findings contrary to those made by a WCJ in a collateral workers' compensation proceeding." *Scierka,* 852 A.2d at 422.

Even though two different agencies can make different findings based on the same information, collateral estoppel cannot prevent them from acting independently to come to different conclusions. Because collateral estoppel does not apply in this case, I would remand the matter to the Board to make a decision on the merits.

---

1. Act of December 8, 1959, P.L. 1718, *as amended,* (Act 632) 61 P.S. § 951. This section allows an employee of a correctional institution to be paid salary, medical expenses and workers' compensation for any injury sustained while in the course of employment due to the actions of an inmate.